## COREY *v.* CITY OF ANN ARBOR.

Municipal Corporations—Ice on Sidewalk—Citizen's Negli-
    gence—Notice.

> No recovery can be had against a city for injuries due to slip-
> ping on an icy sidewalk on other than a business street,
> where such condition resulted from the leaking of a citizen's
> hydrant, and had existed not more than three days, the de-
> fendant having no actual notice of such condition, and it not
> being shown that any officer of defendant had been along the
> street during such time, or that such condition was a matter
> of public talk.[1]

Error to Washtenaw; Kinne, J. Submitted April 12,
1900. Decided May 15, 1900.

Case by Ratie E. Corey against the city of Ann Arbor
for personal injuries. From a judgment for plaintiff, de-
fendant brings error. Reversed.

Plaintiff slipped upon an icy sidewalk on Williams
street, in the city of Ann Arbor, in the evening of Febru-
ary 4, 1898, and received serious injuries. The ice was
opposite the premises of one Rockwell, who had a hydrant
in his yard. It is claimed that the pen-stock either leaked
or was left partly open, so that the water ran from it
across the lawn to the sidewalk; that it extended quite a
distance down the walk, and froze. The ice was smooth,
and formed no ridge. There were several inches of snow
upon the ground, and the weather for several days pre-
vious had been very cold. The sidewalks were cov-
ered with snow, which was packed very hard, all over
the city, and were more or less slippery. Plaintiff gave
testimony tending to show that this water flowed from
the hydrant on Tuesday preceding the accident, which

---

[1] As to the liability of municipal corporations for ice on sidewalks,
see note to *Hausmann* v. *Madison*, (Wis.) 21 L. R. A. 263.

was on Friday following.   Defendant gave evidence
tending to show that the water flowed from the hydrant
on the night preceding the accident.   Plaintiff was a
dressmaker, and lived, with her parents, upon the lot
adjoining Mr. Rockwell's.   She testified that she went
out on Thursday evening, but had not been out of the
house since Monday previous until the night she was in-
jured.   She is unable to locate the spot where she was in-
jured, and there is some doubt, even from her own state-
ment, whether she fell upon the ice formed by the water
from the hydrant.   The defendant requested the court to
direct a verdict for it upon the ground that no liability
was shown.   The learned circuit judge stated that, if the
case was "to end in his court, he might take a different
course about it, but that there was a sort of lingering
doubt in his mind that the Supreme Court might hold
there was a liability, and he would, therefore, give the
plaintiff the benefit of the doubt."   Plaintiff recovered
verdict and judgment.

*O. E. Butterfield* (*John F. Lawrence*, of counsel), for
appellant.

*Lehman Bros. & Stivers*, for appellee.

GRANT, J. (*after stating the facts*).   It is conceded
that the sidewalk itself was properly constructed, and was
in a safe condition for public travel.   It was only made
unsafe by the ice caused by the water flowing from a
private hydrant.   Counsel for defendant contend that
the statute does not cover this case.   Counsel for the
plaintiff contend that, since the icy condition was not
caused by the elements, the city is liable for the condition.
It is unnecessary to determine this question, since there is
another fatal objection to the plaintiff's right to recover.

It is conceded that the defendant city had no actual
notice.   Under plaintiff's own evidence, the ice had been
there but three days before the accident.   It is not shown
that any officer of the city, charged with the duty to see
that the sidewalks were kept in safe condition for public

travel, had been along this street during that time, or
that its condition was a matter of public talk. Nothing
had occurred to call the attention of an officer there any
more than to any other part of the city. The city officials
had the right to assume that no citizen would be guilty of
so careless an act as to leave his hydrant open, and let the
water flow over the sidewalk. Neither the plaintiff her-
self, nor any member of her household, though they lived
within a few feet, appears to have known anything about
its condition. If neither she nor they knew anything
about it, why should the officers of the city be presumed
to have known it from the fact of its existence for three
days ? There had been a snow the night before, and cov-
ered it up. The city might lawfully assume that this side-
walk would remain in good condition, and that no private
citizen would do any act to render it unsafe. The city was
under no legal obligation to employ men to patrol the
streets to see that such things were not done, or to remedy
them when done. The record utterly fails to show a con-
dition of affairs so notorious that a jury might infer notice
to the corporation. There are many miles of sidewalk in
the city of Ann Arbor. In support of their contention
that the city should have known it, counsel for plaintiff
say, "The place of the accident was but a few blocks
from the business portion of the city." What do they
mean by "a few blocks,"—three, four, or five? For all
that appears upon this record, it might have been a half
mile from the principal business streets of the city. But
this cannot make any difference. It was off the business
streets, and there was no occasion for any officer of the
city to go there until in some manner notified of the con-
dition. *Moon* v. *City of Ionia*, 81 Mich. 635, 642 (46
N. W. 25), is directly in point, and controls this case.
The defendant in that case claimed that the walk was re-
paired August 15th. Plaintiff was injured on the 18th.
It was held that, if this was so, actual notice of the de-
fect was necessary. See, also, *Smith* v. *City of Brook-
lyn*, 36 Hun, 224.

Judgment reversed, and a new trial ordered.

The other Justices concurred.