MARY DEMPSEY v. CITY OF DUBUQUE, Appellant.

**Municipal corporations:** DEFECTIVE WALKS: LIABILITY OF CITY. The
mere fact that snow and ice are permitted to accumulate upon a
sidewalk so as to render the walk dangerous to pedestrians does
not make the city liable for injury caused thereby. It is only
when the same is suffered to remain until by tramping, freezing
and thawing or from other cause the surface has become rough

so that a person in the exercise of ordinary care can not pass. over it without danger of slipping and falling that liability of the city attaches.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION: NEW TRIAL.   Where the evidence of contributory negligence in the use of a sidewalk was such that had the jury followed the instruction of the court, which it is required to do regardless of the correctness of the instruction, it must have returned a verdict for defendant rather than for plaintiff, as in this case, a new trial should be granted to defendant.
The evidence in this case is held to show contributory negligence.

**Same:** EVIDENCE: CONCLUSION: CONDITION OF WALK.   Although expressions of opinion may be given where the situation can not be laid before the jury with sufficient clearness to enable them to fully understand the situation, yet where, as in this action, the inquiry is whether snow and ice had been allowed to accumulate on a walk in amounts and character such as to render it dangerous to pedestrians the facts are simple and easily detailed, so as to enable the jurors to understand the situation and make their own deductions, and the court properly refused to permit witnesses to state their own conclusions as to the condition of the walk.

*Appeal from Dubuque District Court.*—HON. ROBERT BON-SON, Judge.

MONDAY, FEBRUARY 13, 1911.

ACTION for damages resulted in a judgment against defendant from which it appeals.

*George T. Lyon* and *Edgar H. Willging,* for appellant.

*John P. Frantzen,* for appellee.

LADD, J.—Shortly after 1 o'clock p. m. of January 4, 1905, the plaintiff in passing along Julian Avenue, turned nearer the outside of the walk and as she did so, slipped and fell, suffering serious and permanent injuries.   At the intersection of this avenue with other streets, there was

a water fountain.  Upon reaching that, she had met John Kingsley and the two had walked in an easterly direction along the north side of the avenue for about two blocks until they reached Mrs. Carden's candy store, he taking the outer or north side of the traveled portion of the walk and she the inside.  The snow was four and a half inches deep and had not been removed from the sidewalk except in front of the store.  A way wide enough for two to walk had been tramped down in each direction from the store and cinders sprinkled thereon but in front of it the snow had been removed except a ridge of packed snow and ice somewhat north of the center of the sidewalk and extending the entire width of the building probably from the tramped way on one side to that on the other.  Plaintiff took the inside of this ridge and as she approached the easterly extremity of it undertook to pass over it diagonally to the southeast, in order to reach the traveled way beyond and in doing so slipped and fell; and on the part of defendant it is contended: (1) that the city was not negligent in permitting the walk to be in the condition proven, and (2) that plaintiff was guilty of contributory negligence.

I.  It is well settled that the mere fact that snow and ice were on the walk and it was dangerous does not render the city liable.  It is only when the ice or snow is suffered to remain upon the sidewalk until, by tramping of pedestrians, freezing and thawing or other cause, the surface has become rough, rigid, rounded or slanting so that a person, in the exercise of ordinary care can not pass over it without danger of falling, that the defect is such as to render the city liable.  *Tobin v. City of Waterloo*, 131 Iowa, 75; *Boburg v. City of Des Moines*, 63 Iowa, 75; *Hudson v. City of Council Bluffs*, 101 Iowa, 33; *Hofacre v. City of Monticello*, 128 Iowa, 239.

There was some variance in the evidence as to the condition of the sidewalk.  This was of brick and eleven

1. MUNICIPAL CORPORATIONS: defective walks: liability of city.

and one-half feet wide.   The candy store was back from
the street line but between it and the side-
2. SAME: con-
   tributory neg-   walk brick were laid so that from the south-
   ligence:
   instruction:    west corner to the outside of the walk the
   new trial.
distance   was   sixteen   feet   two   inches   and
from the southwest corner two feet less.   The building was
but a fraction of a foot over sixteen feet wide.   Some of
the witnesses say that snow was falling and had covered
the walk on each side of the ridge while others testified
none save the ridge was on the walk.   The estimates con-
cerning the ridge also differ, the west end varying in width
from eight inches to two feet and at the east end from two
to three and a half feet.   Some witnesses thought the packed
ice and snow but one-half to an inch thick while others
estimated it from two to three and a half inches and pos-
sibly more.   Several testified that it was uneven, slanted
toward the sides and was slippery.   But the ridge ex-
tended only in front of the candy store and beyond each
way was the trampled way sprinkled with cinders.   Most
of the evidence was directed especially to the ridge as an
entirety, but there was some testimony that it was not so
thick at the east end and this was somewhat confirmed by
the photographs taken shortly after the accident.   In our
view of the case, it is unnecessary to determine whether
the city was negligent in permitting such an accumulation
of ice and snow for if this were to be conceded, the evi-
dence was such that the jury must have returned a verdict
for defendant under instruction sixteen given by the court:

You are instructed that the defendant city is not
required to keep its sidewalks free from snow and ice for
their entire width, but is required only to keep them in
a reasonably safe condition for persons traveling over the
same while in the exercise of ordinary care.   If there
was a clear space on the sidewalk in question, in front of
the piece of property where the accident is alleged to have
occurred, which the plaintiff could have walked over, and
she saw, or could have seen by the use of ordinary care

and in the exercise of reasonable diligence, that there was a. defect on such sidewalk in the nature of a ridge of ice or snow and ice or snow packed hard, but she still walked upon said ridge, or put herself in a position where she would have to walk upon or over such ridge, while charged with knowledge of the presence of such ridge, and knowing of another and safer way on such walk which she could have used without material inconvenience to herself, then .you are instructed that the plaintiff was guilty of contributory negligence, and if she was in any degree guilty of such contributory negligence, then your verdict must be in· favor of the defendant in this case.

Though plaintiff had not been along the walk for six weeks and had no previous knowledge of its condition, she must have been fully aware thereof as she approached that portion· of it in front of the candy store in broad daylight, between 2 and 3 o'clock p. m. She could and did see the alleged obstruction and the clear spaces each side for she testified,

When I got about to the east of the candy store, it was blocked there, and I was going down to get on the same walk as Mr. Kingsley was on, because it was better footing. . . . I seen the. ice. The ice was there and I had to cross to go where Mr. Kingsley was going. I had to go down and there was a little ice and snow there when I tried to go down to good walk, and there is where I slipped. . . . I came here on this poor walk and I was trying to get where there was better traveling, and I tried to get over there and there was some ice there, too, not very much, and a little snow over it, and there is where I slipped. . . . Mr. Kingsley was walking on the south side and I was walking on the north side until I came to the crossing; there was a ridge. of ice and snow there. I seen the snow, but I didn't know the snow was there. . . . I seen the mound· of ice, and I walked down to where it wasn't so much. . . . There was a little snow all over this sidewalk and that ridge, and the ridge where I crossed was a little smaller than above it, or where I tried to cross. The·

ridge was smaller where I fell than what was above it. Before I stepped on the ridge I seen the snow. I seen the snow and little ridge. I didn't think it was very much. It was the only way I had of getting to the good side where I could make the travel.

If then it were necessary to walk across the ridge from the north side to get onto the tramped way beyond, the view was open to her before she took the north side of the ridge for it extended but sixteen feet ahead. But if it be conceded that she was excusable in taking the north side of the walk, she was not bound to pass over the ridge if dangerous. She could have stepped into the snow ahead, beyond the store front, and on into the tramped way without touching the ridge, as the snow was but four and a half inches deep, or she might have stepped back to the west around the ridge and passed along the other side. As she fell about four feet from the east end, she would have been required to retrace but four or five steps. So, too, she might have taken the south side of the ridge in the first place, and that appears to have been clear. The jury then must have found that there was a clear place which she could have walked over, that she observed the defective condition of the sidewalk, that with such knowledge she walked upon the ridge and this with knowledge of a safer way which she might have taken without material inconvenience to herself and so finding, should have returned a verdict for the defendant had they followed the instruction quoted.

It may be that the instruction does not correctly state the law but, whether so or not, the jurors were bound to follow it and as, had they done so, they must have returned a verdict for the defendant, a new trial should have been granted. As to the rule in such cases, see *Arnold v. City of Waterloo,* 128 Iowa, 411; *Crandall v. City of Dubuque,* 136 Iowa, 663; *Carter v. Town of Lineville,* 117 Iowa, 532; *Cook v. Town of Hedrick,* 135 Iowa, 23;

*Reynolds v. City of Centerville,* — Iowa, —; *Templin
v. City of Boone,* 127 Iowa, 91.

II.   Two witnesses called by plaintiff, after detailing
specifically the facts concerning the condition, were asked
whether the walk was in good condition.   Objections as
calling for a conclusion were sustained and
the statement of another witness that the
walk was in good condition, after detailing
the facts, was stricken on motion as being
a conclusion.   Several cases are cited which, as we think,
are not decisive.   In *Kelleher v. City of Keokuk,* 60 Iowa,
473, the court held it competent for a witness to testify
that the walk was in "good repair" and, in *Brooks v. Sioux
City,* 114 Iowa, 641, that the walk was in good and sound
condition, these being statements of fact.   But in *Laug-
hammer v. City of Manchester,* 99 Iowa, 295, the negli-
gence charged was in permitting snow and ice to accumu-
late upon a stone step and remain there in an uneven,
rounded and slippery condition and questions as to whether
the witness had observed anything on the step that "would
tend to render them in a bad condition" and "would
make it dangerous to fall or otherwise" were held to call
for conclusions as to whether "from his observations, there
was such an accumulation of snow and ice on the steps as
to render them dangerous," saying:   "The actual condition
of the steps at the time these witnesses passed over them,
could have been as easily put before the jury as any fact.
The evidence, then, should have been directed to the facts,
as to the condition of the steps, leaving the jury to deter-
mine whether or not such condition as was described by
the witnesses would have rendered the steps dangerous to
those passing over them.   This was one of the material
questions in the case, and it appears to us that to permit
the witnesses to testify that these steps were not danger-
ous, which is, in effect, what was done, was invading the
province of the jury."   In *Spears v. Mt. Ayr,* 66 Iowa,

3. SAME: evi-
dence: conclu-
sion: condition
of walk.

721, an inquiry as to whether the walk was a good one was held to be improper. In *Carson v. City of Ottumwa,* 102 Iowa, 99, inquiry whether a billboard was in the way of the people along the sidewalk was held improper as calling "for an opinion of the witness concerning a question of fact which, so far as material, the jury was required to decide from the evidence submitted." Plainly the distinction is drawn between testifying of the condition of the walk itself and extraneous matters affecting the walk. In the case at bar, the issue did not involve the repair of the walk or the condition of its material or manner of construction. The enquiry was directed to ascertaining whether snow and ice had been allowed to accumulate on the walk in amounts and character such as to render it dangerous to pedestrians. Whether it had so become was a matter of inference to be drawn from the facts and necessarily a conclusion. These facts were simple and sufficiently detailed to enable the jurors to understand the situation and make their own deductions. Even though expressions of opinion may be given where the situation can not be laid before the jury with sufficient clearness to enable them to fully understand, *Ryan v. Town of Bristol,* 27 Atl. (Conn.) 309, yet the rule is of general application that when all the pertinent facts can be sufficiently detailed and described to enable the jurors to form correct conclusions without the aid of opinions from others, no exception to the rule excluding opinion evidence will be tolerated. *Clifford v. Richardson,* 18 Vt., 626; *Mayor, etc., of City of Milledgeville v. Wood,* 140 S. E. 329; *Shelly v. City of Austin,* 12 S. W. 753.—*Reversed.*