CHRISTINE SMITH, Appellant, v. CITY OF SIOUX CITY, Appellee.

**EVIDENCE: Opinion Evidence—''Safe Condition.''** A witness should
1 not be permitted to testify that a walk was ''ordinarily clean''
when such condition is the crux of the issue before the jury.

**APPEAL AND ERROR: Party Entitled to Allege Error—Nonwaiver**
2 **by Examining Witness.** A litigant who is unsuccessful in his ef-
fort to exclude improper testimony does not waive the error by
examining the witness as to his improper testimony.

**MUNICIPAL CORPORATIONS: Torts—Defects in Streets—Negli-**
3 **gence—Noncompetent Evidence to Excuse.** In an action based on
alleged negligence in maintaining a sidewalk in front of privately
owned property, testimony to the effect that the janitor of the
building was under a duty to keep the walk clean is incompetent.
(See Book of Anno., Vol. 1, Sec. 5945, Anno. 293 *et seq.*)

**MUNICIPAL CORPORATIONS: Torts—Defects in Streets—Notice—**
4 **Evidence.** A city sued for alleged neglect to maintain its streets
may show the date when notice of the injury was served upon it.

**MUNICIPAL CORPORATIONS: Torts—Defects in Streets—Snow and**
5 **Ice—Instructions.** Instructions reviewed, and held to state cor-
rectly the liability of the city for the accumulation of snow and ice
upon the public streets. (See Book of Anno., Vol. 1, Sec. 5945,
Anno. 168 *et seq.*)

Headnote 1: 22 C. J. p. 682. Headnote 2: 4 C. J. p. 705 (Anno.)
Headnote 3: 28 Cyc. p. 1483. Headnote 4: 28 Cyc. p. 1479. Headnote
5: 28 Cyc. p. 1516.

*Appeal from Woodbury District Court.*—ROBERT H. MUNGER,
Judge.

NOVEMBER 24, 1925.

ACTION to recover damages for injuries alleged to have been
sustained in a fall on an icy sidewalk in a street of appellee
city.—*Reversed.*

*Wagner, Pike & Knoepeler,* for appellant.

*Paul M. Hatfield* and *E. G. Smith,* for appellee.

DE GRAFF, J.—Plaintiff alleges that she was injured by falling on an icy sidewalk in the city of Sioux City, at about half past three o'clock on the afternoon of February 24, 1924, whereby she sustained a fracture of her right leg, just above the ankle. Her petition recites that, at the place on the walk where the injury occurred, snow and ice had formed a rough, rounded, and uneven condition, and had so existed for such length of time as to establish notice to the municipal authorities, and that failure to remove the same constituted actionable negligence. Plaintiff further alleged her freedom from contributory negligence, and demanded recovery in damages for physical injury, mental pain and suffering, and resulting incapacity to pursue her vocation as a seamstress.

The defendant denied generally as to liability. Upon a trial of the issues thus raised, the jury returned a verdict for the defendant. A motion for new trial was overruled, and from an entry of judgment on the verdict this appeal is taken.

I. Among the assignments of error relied upon by appellant for reversal is the refusal of the trial court to sustain objections and strike out the testimony of the witness Holt that the sidewalk in the vicinity of the accident during the month of February was "reasonably clean." This question and answer appear twice in the testimony of this witness, and the effort to obtain something more specific was quite unsuccessful. After having made the answer of "ordinarily clean" to questions propounded as to the condition of the walk, and after the court had refused to sustain the motion to strike the answer from the record, the witness testified, on cross-examination, as follows:

1. EVIDENCE: opinion evidence: "safe condition."

"When I testified on direct examination that the walks were ordinarily clean during this period of time, I testified because of the three reasons I gave, and it is on account of those three reasons that I testified as I have. I have no personal recollection of condition of that walk upon February 24, February 23, February 22, 21, 20, or any of those dates back to February 13th. I couldn't tell you how much snow fell on February 24th, or how much snow fell on February 20th. I have no personal recollection of the condition of that walk."

By turning to the direct testimony of this witness, we find

that the three reasons set forth, referred to in this cross-examination, are as follows:

"First—One is that it is to the interest of any business man, particularly my business, to keep the sidewalk clean in front of his place of business, so that customers can look into the windows from almost any part of the sidewalk.

"Second—The Genelli Studio is up the hill from my place of business, and if ice and snow was left in front of their place of business, when the thaw came, the water would run down in front of my place of business.

"Third—The third reason would be that I enter my place of business a good many times each day by the front door, and I would, just as a matter of observation, notice the condition of the sidewalk from the corner of the alley."

This testimony is anything but illuminative as to the real condition of the walk on February 24th or on any of the days immediately preceding the date of the accident. "Ordinarily good or clean" is an expansive phrase. It is suggestive of rather wide horizons. It may embrace a multiplicity of viewpoints. It is the open sesame or magical password to the hazy realm of jury-box speculation. We are on record as having frowned upon this kind of testimony. In *Hollenbeck v. City of Marshalltown*, 62 Iowa 21, it was said:

"One witness was asked whether the walk in question was an ordinarily good walk or not, and an objection to the question was sustained. This was correct. It is plain that the question sought the opinion of the witness as to whether or not the walk was a good one."

In *Langhammer v. City of Manchester*, 99 Iowa 295, a similar situation was presented. A witness, being interrogated as to the condition of a walk, answered: "I never observed anything dangerous on them." The question was objected to as calling for the conclusion of the witness. We there said:

"There is nothing in the nature of the facts surrounding this accident and the condition of these steps which prevents their being fully detailed to the jury by the witnesses. The actual condition of the steps at the time these witnesses passed over them, could have been as easily put before the jury as any fact. The evidence, then, should have been directed to the facts

as to the condition of the steps, leaving the jury to determine whether or not such condition as was described by the witnesses would have rendered the steps dangerous to those passing over them. This was one of the material questions in the case, and it appears to us that to permit the witnesses to testify that these steps were not dangerous—which is, in effect, what was done—was invading the province of the jury. It must be admitted that it is often a difficult question to determine when a witness is .testifying to a fact and when to a conclusion; but we think these questions called for a conclusion, and were, therefore, improper.''

Counsel for appellee city seek to break the force of this contention by insisting that counsel for plaintiff opened this particular field for exploitation when he took the witness Holt

2. APPEAL AND ERROR: party entitled to allege error: nonwaiver by examining witness.

for cross-examination. We cannot accept this view. Counsel for plaintiff had already made the proper objections to this class of testimony on direct examination. He had the right on cross-examination to press the issue, with the purpose in view to emphasize his conviction that the witness was sounding forth glittering generalities and mere conclusion, rather than narrating specific facts. The admission of this testimony was error.

II. The witness Voiland, an employee of the Genelli Studio in front of which the accident to plaintiff occurred, was asked whether or not his duties as janitor of the building included

3. MUNICIPAL CORPORATIONS: torts: defects in streets: negligence: noncompetent evidence to excuse.

the cleaning of the walks. Objection was made that it called for evidence as to the custom of employing janitors to do certain work, and as being incompetent. for the purposes in issue. An answer to the effect that such custom did prevail was permitted to stand. In the recent case of *Buffalo v. City of Des Moines,* 193 Iowa 194, we held that janitorial custom was not competent evidence in a case of this kind.

III. The appellant complains that the defendant city was permitted to use the city claim agent as a witness, to prove by him, over her objection, the date when he received the notice of

the accident in question. It is urged in argument that:

4. MUNICIPAL COR-
PORATIONS:
torts: defects in
streets: notice:
evidence.

"This furnished a fertile field for argument of defendant's counsel to the effect that a city with 500 or more miles of sidewalks could not be expected to produce evidence of the condition of the walk in question when its claim agent didn't know about the accident until 60 days after the same occurred, and that the prejudice resulting to the plaintiff from the admission of such evidence is clearly apparent."

We cannot bring ourselves to the point of classifying this objection as a reversible error. The filing of a claim within a certain time limit is one of the statutory preliminaries in this kind of action. It is the right of the city to show the date when notice was filed. Counsel for the city may have permitted his imagination or fancy to surge somewhat violently throughout the realm of argumentation, but no such showing is made of the abuse of this peculiar privilege as to warrant interference or admonition on our part.

IV. Complaint is made of the fourth subdivision of Paragraph 5 of the instructions. It reads:

"The fact, if it be a fact, that ice and snow has been permitted to accumulate on the sidewalk of a city from natural causes, and may have been permitted by the city to remain thereon for a considerable length of time, and though slippery, because of the smoothness of the surface, does not constitute such a defect alone for which a city may be held responsible

5. MUNICIPAL COR-
PORATIONS:
torts: defects in
streets: snow
and ice: in-
structions.

for an injury resulting to a pedestrian thereon. Under the law applicable to the case before you, it is only where such snow and ice are allowed to remain upon the walk until, by its being trampled upon by pedestrians and by freezing and thawing, or from other causes, the surface of such snow and ice becomes rough, ridged, rounded in such a manner that a person in the exercise of ordinary care could not pass over it without danger of falling, that the said ice and snow are such as to render the city liable. There is no duty resting on the city to remove snow and ice from the sidewalk so long as the snow and ice remain unchanged by the interference of man, or from other artificial

causes by which the snow or ice become ridged, uneven, or is made to assume some other form or present some other danger than it would have presented solely from natural causes. ''

It is contended by appellants that this instruction placed an unjust burden upon the plaintiff, and was confusing, inconsistent, and contradictory to certain other instructions given. After a careful examination of the language used, we are convinced that the trial court fairly succeeded in stating the law of this state as applied to defective walks made so by accumulations of snow and ice. Much of the language employed bears close analogy to that used in *Finnane v. City of Perry,* 164 Iowa 171. See, also, *Allen v. City of Fort Dodge,* 183 Iowa 818; *Dempsey v. City of Dubuque,* 150 Iowa 260; *Templin v. City of Boone,* 127 Iowa 91; *DeWall v. City of Sioux City,* 181 Iowa 333. In the light of these authorities we hold that the instruction was not prejudicial to plaintiff's cause of action.

For the reasons heretofore given, the judgment entered is reversed, and the cause is remanded for new trial.—*Reversed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.